**Opinion issued August 14, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00642-CR

_____

**MOHAMMUD NANGURAI, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Case No. 1372694**

---

## O P I N I O N

A jury convicted appellant Mohammud Nangurai of assault, a third-degree

felony, *see* TEX. PENAL CODE ANN. § 22.01(b)(2) (West Supp. 2013), and it

assessed punishment at five years in prison. *See id.* § 12.34(a) (West 2011). On

appeal, Nangurai contends that the trial court erred by denying his request for an

instruction on the lesser-included offense of misdemeanor assault. The State concedes error in the trial court's failure to give the requested instruction, but argues on appeal that Nangurai was nevertheless not harmed by the error.

We reverse and remand.

## Background

Two Houston Police Department officers responded to a 9-1-1 report of a woman being assaulted in an apartment. When they arrived, they noticed that a window was broken, and they heard a woman inside screaming for help. After the officers began kicking the door in an attempt to gain entry, Nangurai opened it, dropped to the ground, and was handcuffed. The complainant, who was naked from the waist down, crawled out of the apartment and curled into a fetal position. She was screaming, crying, shaking, and "terrified."

The complainant and Nangurai lived together in an apartment with their two-month-old daughter, who had spent the prior night with the complainant's mother. The complainant told the officers that she and Nangurai, whom she referenced as her "husband," had attended a party the previous night and returned home in the early morning. She told them that Nangurai became angry when she refused to have sex with him, and he beat her with his fists.

The complainant declined emergency medical attention at that time, but she later went to the hospital at her mother's urging. Medical records showed that the

2

complainant reported that she had been assaulted by her "partner" and "hit all over." The complainant and her infant daughter stayed with the complainant's mother for nearly two weeks after the incident. The complainant's mother testified that the complainant told her Nangurai beat her: "She said that she was laying on her back and he was sitting on her and he was punching her face and when she covered her face, he bit the hands with the teeth."

Nangurai was arrested and charged with felony assault-family violence based on a prior conviction for assault allegedly committed against a person with whom he had a dating relationship. At trial, police officers and neighbors described the events that led to Nangurai's arrest. One officer testified that Nangurai and the complainant were the only people in the apartment when they arrived. In addition, pictures of the complainant's injuries, which had been taken by her mother while she recovered from the assault, were admitted into evidence. These pictures showed bruising, swollen and blackened eyes, and a swollen lip.

With respect to the prior assault case, the State introduced an order deferring adjudication, showing that Nangurai pleaded guilty to assault, as well as a jail card referencing the same case number, showing a release date four months after deferred adjudication had been scheduled to end, suggesting that his deferred adjudication had been revoked. A fingerprint expert testified that Nangurai was the same person who was convicted of the prior crime. However, the deferred-

adjudication order from the prior assault identified the offense as "assault," and it made no mention of family violence. In the preprinted portion of that order, which provided options for affirmative findings, the court had circled "N/A" as to "family violence." However, Angela Amira, the complainant from the prior assault, testified that she and Nangurai were in a dating relationship at the time of that assault.

The complainant testified for Nangurai, denying that he had assaulted her. She testified instead that she tripped and fell over a chair and that Nangurai had been helping her up when the police arrived. Nangurai gave similar testimony. He also testified that he had previously been convicted of assault but that he and Amira never had a dating relationship. On cross-examination the State introduced into evidence a stipulation in which Nangurai admitted that he previously had been convicted of assault which was committed against a person with whom he had a dating relationship. However, on redirect examination, he testified that he had disavowed and withdrawn the stipulation and that he had not ever dated Amira.

At the charge conference, Nangurai requested an instruction on the lesser-included offense of misdemeanor assault. He contended that if the jury determined that he was guilty of committing assault in this case, it still reasonably could have disbelieved that his prior conviction was for assault of a family member or person with whom he had a dating relationship. The trial court refused the instruction. The

4

jury found Nangurai guilty of felony assault involving family violence and sentenced him to five years in prison.

## Analysis

In a single issue on appeal, Nangurai contends that the trial court reversibly erred by denying his request for a jury instruction on the lesser-included offense of misdemeanor assault of a family member.

The Texas Code of Criminal Procedure provides, "[i]n a prosecution for an offense with lesser included offenses, the jury may find the defendant not guilty of the greater offense, but guilty of any lesser included offense." TEX. CODE CRIM. PROC. ANN. art. 37.08 (West 2006).

An offense is a lesser-included offense if:

> (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

> (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

> (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

> (4) it consists of an attempt to commit the offense charged or an otherwise included offense.

*Id.* art. 37.09.

We use a two-pronged test to determine whether a defendant is entitled to an instruction on a lesser-included offense. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012); *Sweed v. State*, 351 S.W.3d 63, 67 (Tex. Crim. App. 2011); *Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007). The first step is a question of law, in which the court compares the elements alleged in the indictment with the elements of the lesser offense to determine "if the proof necessary to establish the charged offense also includes the lesser offense." *Cavazos*, 382 S.W.3d at 382. "The second step of the lesser-included-offense analysis is to determine if there is some evidence from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense." *Sweed*, 351 S.W.3d at 67–68. Because this fact question depends on the evidence presented at trial, we review the entire record in making this determination on appeal. *See id.*; *Hayward v. State*, 158 S.W.3d 476, 478–79 (Tex. Crim. App. 2005). Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a jury instruction on a lesser-included offense. *Hall*, 225 S.W.3d at 536 (citing *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994)). "Although this threshold showing is low, 'it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is

6

warranted.'" *Sweed*, 351 S.W.3d at 67–68 (quoting *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997)). "[T]he standard may be satisfied if some evidence refutes or negates other evidence establishing the greater offense or if the evidence presented is subject to different interpretations." *Sweed*, 351 S.W.3d at 68.

The indictment in this case alleged that Nangurai "intentionally and knowingly" caused "bodily injury" to the complainant, "a person with whom [he] had a dating relationship," by "striking the complainant with his hands" and alternatively "by grabbing the complainant with his hands." The indictment further alleged that 13 years before the charged offense, Nangurai was convicted of "assault which was committed against a person with whom the defendant had a dating relationship."

A person commits the offense of misdemeanor assault if he "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." TEX. PENAL CODE ANN. § 22.01(a)(1). Because this offense is "established by proof of the same or less than all the facts" necessary to prove the charged offense, *see* TEX. CODE CRIM. PROC. ANN. art. 37.09(1), and "the proof necessary to establish the charged offense also includes the lesser offense," *Cavazos*, 382 S.W.3d at 382, we conclude that misdemeanor assault is a lesser-included offense of felony assault of a family member. *Compare* TEX. PENAL CODE

ANN. 22.01(a)(1) (misdemeanor assault), *with id.* § 22.01(b)(2) (felony assault of a family member). Accordingly, we hold that the first step of our inquiry into whether a jury instruction was warranted is satisfied. *See* TEX. CODE CRIM. PROC. ANN. art. 37.08 (West 2011); *Cavazos*, 382 S.W.3d at 382.

We next consider the second step: whether there is a scintilla of evidence that Nangurai is guilty, if at all, of only misdemeanor assault and not felony assault of a family member. *See Sweed*, 351 S.W.3d at 67–68. Nangurai did not deny that he had been previously convicted of assault, but he did challenge the characterization of that offense as being against a person with whom he had a dating relationship. He relies upon his own testimony that he was not in a dating relationship with Amira, as well as the deferred-adjudication order in that case, which h was admitted into evidence at trial and which shows an affirmative finding of "N/A" as to family violence. Based on this evidence, we agree that misdemeanor assault was a valid rational alternative to the charged offense, and we conclude that the jury should have been instructed on the lesser-included offense of misdemeanor assault. On appeal, the State agrees that the trial court should have instructed the jury on this lesser-included offense. *See* State's Br. at 9.

Having found error in the trial court's denial of the requested instruction on the lesser-included offense of misdemeanor assault, we must determine whether that error requires reversal. The erroneous refusal to give a requested instruction on

8

a lesser-included offense is charge error subject to an *Almanza* harm analysis. *Saunders v. State*, 840 S.W.2d 390, 392 (Tex. Crim. App. 1992); *O'Brien v. State*, 89 S.W.3d 753, 756 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on rehearing). Under *Almanza*, when jury-charge error has been preserved, as it was in this case, we will reverse if the error in the court's charge resulted in some harm to the accused. *See Almanza*, 686 S.W.2d at 171; *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). "[T]he harm from denying a lesser offense instruction stems from the potential to place the jury in the dilemma of convicting for a greater offense in which the jury has reasonable doubt or releasing entirely from criminal liability a person the jury is convinced is a wrongdoer." *Masterson v. State*, 155 S.W.3d 167, 171 (Tex. Crim. App. 2005). Thus, ordinarily, if the absence of the lesser-included offense instruction left the jury with the sole option either to convict the defendant of the charged offense or to acquit him, some harm exists. *Saunders v. State*, 913 S.W.2d 564, 571 (Tex. Crim. App. 1995).

The State argues that Nangurai was not harmed because there was overwhelming evidence that he was guilty of the charged crime. The State relies on the deferred-adjudication order and jail card from the prior assault and the testimony of the complainant from that case. In addition, the court admitted into evidence a stipulation in which Nangurai admitted that he had previously been

convicted of assault which was committed against a person with whom he had a dating relationship.

However, on the day of trial, Nangurai disavowed and withdrew his stipulation. And although Amira testified that she dated Nangurai, he testified that he never had a dating relationship with her. Thus, the question of whether Nangurai had a dating relations hip with Amira depended on the jury's assessment of the credibility of the witnesses.

The State contends that the jury's verdict necessarily implies that it found Nangurai's testimony to be not credible. It reasons that because "the jury did not find [Nangurai] credible, and his testimony was the only evidence contesting the dating relationship of the case he was previously convicted of, the jury could not have reasonably concluded that he was guilty of a lesser offense."

However, "[b]ecause the jury is the sole judge of a witness's credibility, and the weight to be given the testimony, it may choose to believe some testimony and disbelieve other testimony." *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). Thus, the jury could have believed that Nangurai did not have a dating relationship with Amira while disbelieving his denial of wrongdoing in this case. The jury was presented photographic and testimonial evidence that Nangurai assaulted the complainant, including consistent testimony from several disinterested witnesses, such as neighbors and law enforcement officers. Yet they

were denied an opportunity to evaluate Nangurai's conduct in light of the lesser criminal offense. As in *Masterson*, the jury was faced with the potential dilemma of convicting Nangurai of felony assault, without regard to whether they had reasonable doubt about his dating relationship with Amira, or acquitting him of criminal liability entirely despite sufficient evidence to show that he assaulted the complainant in this case. *See Masterson*, 155 S.W.3d at 171; *Saunders*, 913 S.W.2d at 571. In addition, the punishment he received, five years in prison, exceeded the maximum term of imprisonment that he could have received if he had been convicted of misdemeanor assault. *Compare* TEX. PENAL CODE ANN. § 12.34 (punishment range for confinement for third-degree felony is two to ten years in prison), *with id.* § 12.21 (confinement as punishment for class A misdemeanor may not exceed one year in jail); *see Bignall v. State*, 899 S.W.2d 282, 284 (Tex. App.—Houston [14th Dist.] 1995, no pet.) (holding that the imposition of a penalty that is more severe than the potential maximum penalty for the requested lesser-included offense is evidence of some harm).

Accordingly, we hold that the trial court's error in denying the requested instruction on the lesser-included offense of misdemeanor assault caused Nangurai some harm and is reversible. *See Masterson*, 155 S.W.3d at 171; *Saunders*, 913 S.W.2d at 571; *Williams v. State*, 314 S.W.3d 45, 53–54 (Tex. App.—Tyler 2010, pet. ref'd) (holding that error in denying lesser-included offense was harmful when

11

there was no intervening lesser-included offense that the jury rejected which would have shown that the jury "had not been placed on the horns of the dilemma of whether to convict Appellant of the only offense available to them or to set him free" and the punishment assessed exceeded the maximum potential penalty for the requested lesser-included offense); *Jones v. State*, 280 S.W.3d 294, 298 (Tex. App.—Amarillo 2007, pet. ref'd) (same). We sustain Nangurai's sole issue.

## Conclusion

We reverse the judgment of the trial court and remand for a new trial.

Michael Massengale
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

Publish. TEX. R. APP. P. 47.2(b).